# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No.    20MJ1961
                                              )
Guest registry for the Motel 6 located at 745 E. Street, )
Chula Vista, CA                                )
                                              )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC sec. 1591 | Sex Trafficking by Force, Fraud, or Coercion |
| 18 USC sec. 2421 | Transportation of Individuals to Engage in Prostitution |
| 18 USC sec. 1952 | Use of an Interstate Facility to Promote Prostitution |

The application is based on these facts:
See Attached Affidavit of FBI Special Agent Jonathan Reynolds, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.*

*Applicant's signature*

Special Agent Jonathan Reynolds, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: May 15, 2020

*Judge's signature*

City and state: San Diego, California              Hon. Linda Lopez, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Jonathan A. Reynolds, Special Agent with the Federal Bureau of Investigation, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in furtherance of an investigation conducted by the San Diego Human Trafficking Task Force, for an application to search and/or seize the following items for and as evidence of crimes, specifically, violations of Title 18, United States Code, Sections 1952(a)(3) (Use of an Interstate Facility to Promote Prostitution), 1591 (Sex Trafficking by Force, Fraud, or Coercion), and 2421 (Transportation of Individuals to Engage in Prostitution):

   a. Guest registry for the Motel 6 located at 745 E. Street, Chula Vista, CA, for the following dates: February 28, 2020 to March 3, 2020 **(Target Item 1)**.

   b. Surveillance video recordings from the Motel 6 located at 745 E. Street, Chula Vista, CA, for the following dates: February 28, 2020 to March 3, 2020 **(Target Item 2)**.

   c. Items and belongings left behind by the occupants of room #244 of the Motel 6 located at 745 E. Street, Chula Vista, CA, for the following dates: February 28, 2020 to March 3, 2020 **(Target Item 3)**.

(Collectively, the **Target Items**.)

2. Gregory RANDLE was arrested by Chula Vista Police Department officers on March 3, 2020, for violations of 18 U.S.C. 1952(a)(3). RANDLE and two female victims (AF1 and AF2) were registered as guests at the Motel 6 located at 745 E. Street, Chula Vista, CA from February 28, 2020 to March 3, 2020. RANDLE and the two female victims were registered in room #244 of the Motel 6. According to hotel staff working on the evening of March 3, 2020, room #244 was

registered to RANDLE; the surveillance video to the Motel 6 located at 745 E. Street, Chula Vista, CA, captured and recorded RANDLE and the two female victims and their interactions on the dates of February 28, 2020 to March 3, 2020; and RANDLE and the two female victims left behind all their belongings and personal items in room #244 of the Motel 6 located at 745 E. Street, Chula Vista, CA, on the date of RANDLE'S arrest.

3. Based on the information below, there is probable cause to believe that the **Target Items** constitute or contain evidence of the aforementioned crimes, as described in Attachments B-1, B-2, and B-3.

4. The information set forth in this affidavit is based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of obtaining a search warrant for the **Target Items**, it does not set forth each and every fact that I or others have learned during the course of this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

6. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), United States Department of Justice. I have been employed by the FBI since March of 2017, and I have participated in investigations involving violent

crimes, bank robberies, human trafficking, child exploitation, organized crime, drug trafficking, and money laundering activities. I also received twenty-one weeks of training at the FBI Training Academy in Quantico, Virginia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, physical surveillance, forensic techniques, interviewing, and a variety of other subjects. Currently, I am assigned to the FBI San Diego Headquarters, Human Trafficking-1, in San Diego, California to work crimes against children, specifically, the sexual exploitation of children to include various illicit commercial sex activities.

7. Prior to my employment with the FBI, I was employed as a Police Officer with the Mount Pleasant Police Department in Charleston, South Carolina. I graduated from the South Carolina Criminal Justice Academy in Columbia, South Carolina in May 2013. During my four years as a Police Officer, I received training in various forms of investigations to include child exploitation, narcotics, and gang investigations. As a Police Officer and SWAT operator I assisted and participated in the execution of numerous search and arrest warrants, many involving narcotic and gang related offenses as well as child exploitation.

8. In October 2017, I was assigned to the East County Regional Gang Task Force ("ECRGTF"). The San Diego County Sheriff's Department appointed me an Associate Agent assigned to the Sheriff's Department Special Investigation Division and specifically assigned to the ECRGTF. During my time at the ECRGTF, I had personal contact with dozens of self-admitted or known gang members and their associates and have discussed their lifestyles, method of

operations regarding violent and property crimes, organizational methods, and their drug trafficking and drug distributing activities.

9.      Since August 2019 I have been assigned to the SDHTTF where I have participated in investigations involving the exploitation of children for illicit commercial sex activity, human trafficking, various illegal activity of criminal gang members and have performed a variety of related investigative tasks. During my career I have conducted a multitude of investigative activities including, but not limited to:

a. Supervising as a case agent/co-case agent investigations involving organized criminal street gangs, the trafficking of drugs, weapons, the laundering of monetary instruments, the trafficking of human beings, and the exploitation of children for illicit commercial sexual acts;

b. Functioning as a surveillance agent and thereby observing and recording movements of persons involved in criminal street gang activity and those suspected of committing violent crimes, exploitation of children for illicit commercial sex activity, and trafficking in illegal drugs and weapons;

c. Interviewing witnesses, cooperating individuals, and informants relative to the illegal activities conducted by organized gang members to include the exploitation of children for illicit commercial sex activity, narcotics sales, money laundering, drug trafficking, weapon sales and trafficking, commission of violent acts, racketeering, intimidation, extortion, human trafficking, and environmental crimes;

d. Participating in the tracing of monies and assets gained by criminal street gang members from the illegal commercial sexual activity, sale of drugs (laundering of monetary instruments) and weapons;

e. Monitoring and reviewing thousands of recorded jail calls as well as recorded telephone calls pursuant to Title III court orders in child exploitation, narcotics and gang-related cases as well as handled Confidential Human Sources with access to drug dealers, firearms dealers, gang members and various gang hierarchies; and

    f.   Participating in investigations involving illicit commercial sexual activity, purchases of controlled substances, purchases of weapons, the execution of search and arrest warrants, surveillance in connection with criminal investigations, and the interview of confidential sources.

9. My experience as an FBI Special Agent has included the investigation of cases involving the use of computers and the internet to commit crimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of cellular telephones and other electronic devices.

10. Through my training, experience, and consultation with other law enforcement officers, I have learned that:

    a.   Individuals involved in illicit commercial sex maintain records, including electronic files, related to their illicit business on computers and computer servers hosting internet applications such as electronic mail (email) and personal social networking web pages;

    b.   Individuals involved in illicit commercial sex often solicit clients through electronic advertisements and other media, such as Craigslist, MegaPersonals, Skipthegames, and other social media sites accessed on cellular telephones and computers;

    c.   Individuals involved in illicit commercial sex maintain records of correspondence relating to client contact information as well as travel and lodging arrangements involved in such illegal activity;

    d.   Individuals involved in illicit commercial sex maintain documents and files containing names of associates and/or coconspirators involved in prostitution;

   e.      Individuals involved in illicit commercial sex maintain financial records, bank statements, money orders, money order receipts, and cash that are evidence of payments made in conjunction with prostitution;

   f.      Individuals involved in illicit commercial sex use cellular telephones, tablet, desktop, removal hard drives and flash drives, and notebook computers and maintain these items on their person and/or in their residences and/or vehicles. Individuals involved in illicit commercial sex use cellular telephones, tablet, notebook computers, and removable storage media to increase their mobility, coordinate illicit activities, and to provide pimps and prostitutes with instant access to phone calls, voice messages, text messages, instant messaging (IM) and internet-based correspondence. Individuals involved in illicit commercial sex will use multiple cellphones, tablets, notebook computers, and phone numbers in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These electronic devices contain wire and electronic data concerning telephonic contact records, text messages, and electronic mail messages with co-conspirators and clients, as well as telephone books containing contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize digital cameras, cellular telephones, desktop and notebook computers with photograph and video capabilities to take photographs and videos of themselves as well as other coconspirators for the purpose of electronic advertising and promotion of prostitution. Moreover, I know that digital evidence can be stored on a variety of systems and storage devices including: hard disk drives, DVD ROMS, pagers, money chips, thumb drives, flash drives, and portable hard drives;

   g.      Individuals involved in illicit commercial sex use social media sites like Facebook or Instagram to find clients and prostitutes. They use Facebook messaging applications to communicate with prostitutes and customers to increase their mobility and coordinate illicit activities. Individuals involved in illicit commercial sex will often use multiple social media accounts in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These social media accounts contain electronic data concerning instant messaging, electronic mail and social media addresses of co-conspirators and clients, including contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize social media to store and display, commonly known as posting, photographs, videos, and text of themselves as well as other co-conspirators for the purpose of electronic advertising and promotion of prostitution;

  h. Individuals involved in illicit commercial sex often drive vehicles, sometimes rented, leased, or registered in the names of other people, to transport themselves and coconspirators, inter and intra state, to pre-arranged meetings with clients to engage in prostitution. These same individuals often get other persons to rent hotel rooms, pay for online postings or other items to avoid detection.

11. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, the evidence of illegal activity described above in paragraphs "a" through "h" is maintained by individuals involved in illicit commercial sex in property that they and their associates live in and operate as well as on online accounts including email accounts, which can be accessed on computers and cellular telephones.

## FACTS IN SUPPORT OF PROBABLE CAUSE

12. On March 3, 2020, at approximately 1709, Chula Vista Police Department (CVPD) received a report from the mother of an adult female (AF1) who reported that her daughter had fled a hotel in Chula Vista, California, and was hiding in the bathroom of a Black Angus Steakhouse. She reported that she had picked up AF1 and driven to the CVPD station. CVPD Officers Chavira, Sandoval, and McLean made contact with AF1 and her mother in the parking lot of the CVPD station.

13. AF1 told CVPD officers that she had been picked up by a man that she knew by the name of "Valentino," but who she later positively identified as RANDLE, a few weeks prior, in mid-February. AF1 stated that when RANDLE picked her up, he told her that she owed him $1,500 to take her back to Florida. When he took her to a hotel, another woman, AF2, was with him. Together, RANDLE, AF1, and AF2 traveled to California—first to Los Angeles, and then, a few days later, to San Diego.

14. In Los Angeles, AF1 stated that RANDLE first used online applications to set up "dates" for both AF1 and AF2[1], and later took the two women to an area in Lynwood, California known for high prostitution where he had them engage in commercial sex transactions. After a short period of time, all three traveled to San Diego, where RANDLE rented Room 244 at the Motel 6 located at 745 E St., Chula Vista, California. AF1 stated that while RANDLE and AF2 were asleep, she fled the room and went to a nearby Black Angus Steakhouse, where her mother picked her up.

15. CVPD responded to the Motel 6 and contacted RANDLE and AF2 still at the motel. The front desk clerk confirmed that Room 244 had been rented by RANDLE. AF2 was found in Room 244, but was unwilling to provide investigators with a copy of the registry (**Target Item 1**) without a warrant, nor would staff provide surveillance footage (**Target Item 2**) without a warrant. AF2 gave her consent to search the room. Inside the room CVPD officers found a bag containing multiple condoms, two dildos, multiple pairs of women's panties, and lingerie[2], as well as a black Samsung Android cell phone in a black colored case marked "AT&T" (Target Device), which was found on a dresser within the hotel room. AF2 stated that the phone belonged to RANDLE and provided the phone number of the Target Device as (985) 974-2842. The phone was seized by CVPD; all other items (**Target Item 3**) in the room were left behind.[3] AF2 told CVPD Officers Monreal and Chavira that she had met a man named "Valentino" (who she later positively identified as RANDLE) on the website "Plenty of Fish" in September 2019. In

---

[1] In my training and experience, I know that "date" is a term commonly used to refer to a commercial sex transaction.
[2] In my training and experience, I know that this is consistent with one who is engaging in commercial sex.
[3] Investigators have spoken with Motel 6 staff, who confirmed that any items left in the room were placed in a box and kept at the hotel separate from the property of other guests.

January 2020, RANDLE picked up AF2 in Pensacola, Florida. They began to travel, stopping first in Huntsville, Alabama, and then on to various other cities, eventually arriving in Las Vegas, Nevada around February 14, 2020. In each city, RANDLE posted advertisements offering AF2 for commercial sex on websites such as skipthegames.com. AF2 stated that she would engage in commercial sex, and then give all the money she earned to RANDLE, who claimed that she owed him the money for picking her up in Florida, and for other expenses.

16.     Investigators from the San Diego Human Trafficking Task Force (HTTF) were called. They spoke with both AF1 and AF2. AF1 largely confirmed her earlier statement, and further explained that while they were in Los Angeles, all of the "dates," during which she was required to perform oral sex or have sexual intercourse for money, were set up by RANDLE, including all prices and details. She stated that RANDLE would park his car and watch the two women as they walked the street. She stated that both she and AF2 had two or three "dates" a night, after which RANDLE took all the money. He would then tell AF1 how much he still owed her and deducted the cost of food, essentials and hotel rooms from the money she had earned. AF1 further stated that RANDLE took photographs of her and posted them in online advertisements.

17.     AF2 also relayed to HTTF investigators much of what she had previously reported to CVPD officers. She further explained that at each location, RANDLE conducted all the posting of commercial sex advertisements, communicated with buyers, and set prices. She stated that RANDLE said the price for oral sex she was $40.00-$60.00.  For a quick visit for sexual intercourse, $60.00-$70.00; for a 30-minute visit for sexual intercourse the price was $80.00-$100.00; and for an hour of sexual intercourse (depending on the details) the price was $100.00-$200.00. She estimated she had been with approximately 4-5 men per day.

18. HTTF Investigators searched law enforcement databases and found an advertisement on plentyoffish.com for AF1. It contained multiple pictures of AF1, listed a location of Chula Vista, California, and included the phrase "Have fun with [AF1]." Based on my training and experience, and in light of both AF1 and AF2's statements regarding RANDLE's role in their travels, I believe that RANDLE posted the advertisement offering commercial sex with AF1.

19. Both AF1 and AF2 gave consent to the review of their cellular telephones. In each, HTTF investigators located text messages between the women and RANDLE. In a conversation with AF1 dated March 2, 2020, AF1 texted "He gone," to which RANDLE responded, "Everything went smoothly?" and AF1 replied "yea." In a conversation with AF2 dated March 2, 2020, RANDLE told AF2 "get your money and then charge him to stay longer. Charge him to finish also…" RANDLE later asked AF2 "yall already did something?" Also found in AF2's phone were photographs of greyhound tickets and hotel reservations corroborating their path of travel, and messages from various websites known for commercial sex.

20. RANDLE was read his rights and agreed to make a statement. He initially stated that the only money AF1 owed him, for gas, had already been paid; and that AF2 had never asked him to take her back to Florida, and claimed that he did not know what either AF1 or AF2 were doing for income. He then stated that the women did not work for him, but rather that he was watching their back and he was working for them. He denied posting advertisements for the women. Later, he claimed that AF2 was working doing virtual online dating," and admitted that he was aware of the way they were making money and that he in fact did benefit from the money they earned and used to pay for things. He nonetheless denied acting as their "pimp" or any further involvement.

21. Investigators from HTTF obtained calls made by RANDLE while in custody in Los Angeles County. During those calls, RANDLE is heard providing

instructions to both women on how they are to act and what to do with customers. Also during one call, RANDLE instructs AF2 not to allow AF1 to access the keys to their vehicle.

22. Investigators also obtained surveillance footage of the McDonald's restaurant near where AF1 was first reported to CVPD. That footage shows AF1 quickly leaving the Motel 6, and looking back over her shoulder, before entering the McDonald's. It then shows her again looking back in the direction of the Motel 6 before again quickly heading in the direction of the Black Angus.

23. Based on the facts of this case, I believe that evidence of sex trafficking crimes may be found in the **Target Items**.

## CONCLUSION

24. Based on the foregoing, I respectfully submit that there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 18, United States Code, Sections 1952(a)(3) (Use of an Interstate Facility to Promote Prostitution), 1591 (Sex Trafficking by Force, Fraud, or Coercion), and 2421 (Transportation of Individuals to Engage in Prostitution), will be found in the Target Items.

25. I therefore respectfully request that this Court issue warrants authorizing me, or another law enforcement officer, to seize the **Target Items**, as described in Attachments B-1, B-2, and B-3.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Jonathan A. Reynolds
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 15 day of May 2020.

_____
HONORABLE Linda Lopez
United States Magistrate Judge

# ATTACHMENT A-1
# ITEMS TO BE SEARCHED

None.

## ATTACHMENT B-1
## ITEMS TO BE SEIZED

Guest registry for the Motel 6 located at 745 E. Street, Chula Vista, CA, for the following dates: February 28, 2020 to March 3, 2020 (Target Item 1),

Which constitutes evidence of violations of Title 18, United States Code, sections 1952(a)(3), 1591, and 2421.